UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARQUEZ DORN,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:13-cv-197
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Marquez Dorn brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for Supplemental Security Income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 12), the Commissioner's response in opposition (Doc. 19), and plaintiff's reply brief (Doc. 22).

**I. Procedural Background**

Plaintiff was born in 1994 and was 16 years old at the time the administrative law judge (ALJ) issued her decision.[1] Plaintiff's mother, Tracey Dorn, filed an application for SSI on his behalf on June 7, 2007, alleging disability due to post traumatic stress disorder (PTSD) and depression. (Tr. 222). Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before ALJ Deborah Smith, which was held on May 20, 2010. Plaintiff appeared and testified at the hearing. Plaintiff's mother and an impartial medical expert (ME), clinical psychologist Mary Buban, Psy.D., also testified at the hearing. On July 14, 2010, the ALJ issued a decision denying plaintiff's SSI application. The Appeals Council denied plaintiff's request for review, making the decision of the ALJ the final administrative decision of the Commissioner.

---

[1] Plaintiff has since attained the age of majority and is therefore bringing this appeal on his own behalf.

I. Analysis

### A. Legal Framework for Children's SSI Disability Determinations

To qualify for SSI, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. *Id.*; 20 C.F.R. § 416.202. An individual under the age of 18 is considered disabled for purposes of SSI "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of SSI benefits:

> 1. Is the child engaged in any substantial gainful activity? If so, benefits are denied.
>
> 2. Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied.
>
> 3. Does the child's impairment meet, medically equal, or functionally equal any in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P., Appendix 1? If so, benefits are granted.

20 C.F.R. § 416.924(a)-(d). An impairment that meets or medically equals the severity of a set of criteria for an impairment in the Listings, or that functionally equals a listed impairment, causes marked and severe functional limitations. 20 C.F.R. § 416.924(d).

In determining whether a child's impairment(s) functionally equals the Listings, the adjudicator must assess the child's functioning in six domains:

> 1. Acquiring and using information;
>
> 2. Attending and completing tasks;

2

    3. Interacting and relating with others;

    4. Moving about and manipulating objects;

    5. Caring for yourself; and

    6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal an impairment in the Listings, an impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). The relevant factors to be considered in making this evaluation are: (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by his medications or other treatment. 20 C.F.R. § 416.926a(a)(1)-(3).

    An individual has a "marked" limitation when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is one that is "more than moderate" but "less than extreme." (*Id.*). An "extreme" limitation exists when the impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation may also seriously limit day-to-day functioning. *Id*.

    If the child's impairment meets, medically equals, or functionally equals the Listings, and if the impairment satisfies the Act's duration requirement, then the child is considered disabled. 20 C.F.R. § 416.924(d)(1). If both of these requirements are not satisfied, then the child is not considered disabled. 20 C.F.R. § 416.924(d)(2).

In determining functional equivalence, the ALJ must consider the "whole child." Social Security Ruling 09-1p, 2009 WL 396031, at *2 (Feb. 17, 2009). The "whole child" approach requires the ALJ to evaluate functional equivalence as follows:

1. How does the child function? "Functioning" refers to a child's activities; that is, everything a child does throughout the day at home, at school, and in the community, such as getting dressed for school, cooperating with caregivers, playing with friends, and doing class assignments. We consider:

- What activities the child is able to perform,

- What activities the child is not able to perform,

- Which of the child's activities are limited or restricted,

- Where the child has difficulty with activities - at home, in childcare, at school, or in the community,

- Whether the child has difficulty independently initiating, sustaining, or completing activities,

- The kind of help, and how much help the child needs to do activities, and how often the child needs it, and

- Whether the child needs a structured or supportive setting, what type of structure or support the child needs, and how often the child needs it.

2. Which domains are involved in performing the activities? We assign each activity to any and all of the domains involved in performing it. Many activities require more than one of the abilities described by the first five domains and may also be affected by problems that we evaluate in the sixth domain.

3. Could the child's medically determinable impairment(s) account for limitations in the child's activities? If it could, and there is no evidence to the contrary, we conclude that the impairment(s) causes the activity limitations we have identified in each domain.

4. To what degree does the impairment(s) limit the child's ability to function age-appropriately in each domain? We consider how well the child can initiate, sustain, and complete activities, including the kind, extent, and frequency of help or adaptations the child needs, the effects of structured or supportive settings on the child's functioning, where the child has difficulties (at home, at school, and in

4

> the community), and all other factors that are relevant to the determination of the degree of limitation.

*Id.*, at **2-3 (internal citations omitted). Importantly, SSR 09-01p goes on to provide more detail about the technique for determining functional equivalence but emphasizes:

> [W]e do not require our adjudicators to discuss all of [these] considerations [] in their determinations and decisions, only to provide sufficient detail so that any subsequent reviewers can understand how they made their findings.

*Id.*, at *3.

### B. The Administrative Law Judge's Findings

The ALJ made the following findings of fact and conclusions of law:

1. [Plaintiff] was born [i]n May . . . 1994. Therefore, he was an adolescent on June 7, 2007, the date the application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).

2. [Plaintiff] has not engaged in substantial gainful activity since June 7, 2007, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: an oppositional-defiant disorder[2] and a depressive disorder (20 CFR 416.924(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. [Plaintiff] does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).

---

[2] "Oppositional Defiant Disorder is a recurrent pattern of negativistic, defiant, disobedient, and hostile behavior toward authority figures that persists for at least six months and is characterized by the frequent occurrence of at least four of the following behaviors: losing temper, arguing with adults, deliberately doing things that will annoy other people, blaming others for his own mistakes or misbehavior, being touchy or easily annoyed by others, being angry and resentful, or being spiteful or vindictive. The behaviors must occur more frequently than is typically observed in individuals of comparable age and developmental level and lead to significant impairment in social, academic, or occupational functioning. In a significant proportion of cases this disorder is a developmental antecedent to Conduct Disorder. DSM-IV." *Goodman ex rel. Chambers v. Barnhart,* 247 F.Supp.2d 1249, 1251 n.4 (N.D. Ala. 2003)).

5

> 6. [Plaintiff] has not been disabled, as defined in the Social Security Act, since June 7, 2007, the date the application was filed (20 CFR 416.924(a)) and continuing through the date of [the ALJ's] decision.

(Tr. 26-35).

In determining that plaintiff's impairments were not functionally equivalent to a listed impairment, the ALJ found:

> 1. [Plaintiff] has less than marked limitations in acquiring and using information. (Tr. 29).
>
> 2. [Plaintiff] has less than marked limitations in attending and completing tasks. (Tr. 30).
>
> 3. [Plaintiff] has marked limitations in interacting and relating with others. (Tr. 32).
>
> 4. [Plaintiff] has no limitation in moving about and manipulating objects. (Tr. 33).
>
> 5. [Plaintiff] has no limitation in the ability to care for himself. (Tr. 34).
>
> 6. [Plaintiff] has no limitation in health and physical well-being. (Tr. 34).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

Plaintiff argues on appeal that the ALJ erred by: (1) failing to find his impairments functionally equal the Listings, and (2) failing to find his impairments meet Listing 112.04. (Doc. 12).

**1. The ALJ erred by relying on medical expert testimony that failed to consider plaintiff's mental impairments in all affected domains to find plaintiff's impairments did not functionally equal the Listings.**

The ALJ found plaintiff's impairments do not functionally equal the Listing of Impairments despite his "marked" limitations in "interacting and relating with others" because he had "less than marked limitations" or no limitations in the remaining functional domains. Plaintiff alleges the ALJ committed an error of law in analyzing whether his impairments

7

functionally equal the Listings because the ALJ relied on testimony from the medical expert, Dr. Buban, who failed to consider plaintiff's depression and oppositional defiant disorder in the functional domains of "attending and completing tasks" and "acquiring and using information." (Doc. 12 at 16). Plaintiff alleges that the critical issue in his case is whether his depression and oppositional defiant disorder caused a marked limitation in only one domain or in more than one domain. Plaintiff contends that Dr. Buban erroneously considered his behavioral impairment solely in the domain of interacting and relating with others to the exclusion of the other domains. (Doc. 12 at 14, citing Tr. 83-84). Plaintiff argues that Dr. Buban failed to consider the full effects of his depression and oppositional defiant disorder in the domains of "attending and completing tasks" and "acquiring and using information" and, therefore, the ALJ's reliance on Dr. Buban's testimony was in error. (*Id*. at 16).[3]

The Social Security rulings and regulations state that the limitations imposed by an impairment must be considered in any affected domain. *See* SSR 09-1p, 2009 WL 396031, at *2 (explaining that the "whole child" approach considers "all of the child's impairments singly and in combination - the interactive and cumulative effects of the impairments - because it starts with a consideration of actual functioning in all settings."); 20 C.F.R. § 416.926a(c)[4] (providing for evaluation of "interactive and cumulative effects of an impairment or multiple impairments").

---

[3] The Commissioner does not address plaintiff's argument that the ALJ committed an error of law by relying on Dr. Buban's testimony in this regard. (Doc. 19).

[4] 20 C.F.R. § 416.926a(c) states: "When we evaluate your functioning and decide which domains may be affected by your impairment(s), we will look first at your activities and your limitations and restrictions. Any given activity may involve the integrated use of many abilities and skills; therefore, any single limitation may be the result of the interactive and cumulative effects of one or more impairments. And any given impairment may have effects in more than one domain; therefore, we will evaluate the limitations from your impairment(s) in any affected domain(s)."

8

The regulations recognize that an impairment "may have effects in more than one domain" and that the limitations for an impairment must be evaluated "in any affected domain(s)." 20 C.F.R. § 416.926a(c). Here, it is not clear from Dr. Buban's testimony that she actually evaluated the limitations from plaintiff's depression and oppositional defiant disorder in all affected domains, such that the Court is unable to find that the ALJ's functional equivalence determination is supported by substantial evidence.

At the ALJ hearing, Dr. Buban listed plaintiff's diagnoses as oppositional defiant disorder and depressive disorder, diagnosed as a mood disorder. (Tr. 78). She described his problems "as more of a behavioral issue." (Tr. 80). Dr. Buban rated plaintiff as "less than marked" in the domain of attending and completing tasks. (*Id.*). She gave the following testimony in response to questioning by counsel concerning this particular domain:

> Q: Now the record seems to show that you know [plaintiff] is failing pretty much all of his academic classes or at least you know getting pretty poor grades.
> A: Okay, but that's because he's not doing the work.
> Q: Is not part of attending and completing tasks not doing the work?
> A: I see his not doing the work and refusing to do homework and refusing to comply with teacher requests as part, all of that as part of the behavior pattern.
> Q: Right.
> A: Where looking at attending and completing tasks we're looking for specific difficulties of being able to attend and able to complete a task. He has the ability to do it, he's not doing it. There's evidence in the record in some of the teacher forms that the teacher has indicated that when he did attend he could complete the tasks. The teachers have felt that he has a lot more ability [than] he's choosing to show them. The other aspect of attending and completing tasks frequently comes into question with attention deficit hyperactivity disorder and there's nowhere in the record where he has - - anyone has even suggested that.
> Q: Right. Well it seems - - it is my understanding - -
> A: We can count it twice, it gets counted under the behavior, the interacting and relating with others.
> . . . .

9

> A: Function and ability, one is the behavioral and that's all interacting and relating with others, the attending and completing tasks you actually look for does he have the ability to attend and the ability to complete the tasks and there are some indications in the record that when he is focused he does attend and he does complete the tasks.
>
> . . . .
>
> A: . . . So if the actual ability in this domain that we're looking for is attending and completing tasks, if the child has the ability to attend and complete a task which is different from choosing not to. And that falls under the behavior and the way the functional domains are set up it does appear that this is, it would more clearly fall under the interacting and relating with others.

(Tr. 82-84). Dr. Buban concluded that "attending and completing tasks is more of a cognitive ability to attend and complete tasks" and that there is "no evidence in the record that he cannot attend and complete tasks." (Tr. 85).

Dr. Buban's testimony is ambiguous as to whether she considered the impact of plaintiff's behavior resulting from his severe impairments under only one domain. (Tr. 83-84). Dr. Buban characterized plaintiff's mental impairments as primarily behavioral in nature. (Tr. 78, 80-82). Yet, Dr. Buban gave no indication that she considered how plaintiff's behavioral symptoms would impact his functioning in the areas of attending and completing tasks and acquiring and using information. To the contrary, Dr. Buban's testimony suggests that she did not consider how plaintiff's depression and oppositional defiant disorder impacted his functioning in the domain of attending and completing tasks because she believed it was appropriate to evaluate only his cognitive ability in this area and to evaluate his behavior only in the domain of interacting and relating with others. (Tr. 83-85). Dr. Buban's testimony is far from clear in this regard, and it appears that her analysis does not comply with the regulatory scheme, which requires that limitations from a given impairment be evaluated "in any affected

10

domain(s)" consistent with the "whole child" approach. *See* 20 C.F.R. § 416.926a(c); SSR 09-1p, 2009 WL 396031, at *2.

The ALJ in turn failed to consider the impact of plaintiff's behavior under the domains of attending and completing tasks and acquiring and using information because she relied largely on Dr. Buban's testimony to assess plaintiff's functioning in these domains. As to the domain of attending and completing tasks, the ALJ found as follows:

> The claimant testified that he does not bring his homework home. Sometimes he does his homework, and sometime[s] [he] does it but does not turn it in. He testified that he is currently learning geometry, but refuses to do it. He said it is hard to stay focused, but his medications help. His seventh grade teachers report that he has obvious to serious limitations in this domain, adding that he is the class clown [Tr. 266-76] . . . . *Dr. Buban said he is failing because he is not doing the work and that such is part of a behavioral pattern.* Teachers indicate that he can and has the ability to complete his assignments *when he focuses and concentrates.* She viewed this as *in part volitional. . . . Dr. Buban added that behavior is different from an inability to attend or complete tasks.* There is no evidence of an attention deficit hyperactivity disorder. In January 2008, a school team meeting noted that he was bright, but would simply not follow through with assignments [Tr. 253-60]. In April 2008, a teacher noted that he generally has no to slight limitations in acquiring and using information [Tr. 266-76].

(Tr. 30-31) (emphasis added). The ALJ gave great weight to Dr. Buban's testimony that plaintiff "has the ability to attend and complete tasks . . . but he simply chooses not to." (Tr. 31). Thus, the ALJ acknowledged that plaintiff has behavioral issues which interfere with his functioning in the domain of attending and completing tasks. However, the ALJ discounted the significance of the behavioral issues and focused instead on whether plaintiff's poor functioning in this area was attributable solely to a lack of cognitive ability. The ALJ did not explain why the behavioral problems, which the ALJ suggested are caused at least in part by plaintiff's mental impairments,

11

should be factored out when considering the impact of plaintiff's impairments on his ability to attend and complete tasks. The ALJ erred by failing to conduct the analysis required under 20 C.F.R. § 416.926a(c) and evaluate the impact of all of the limitations resulting from plaintiff's depression and oppositional defiant disorder, including those attributable to his behavioral problems, on plaintiff's ability to attend and complete tasks.

The ALJ likewise acknowledged that plaintiff has the intellectual capacity to acquire and use information, but that plaintiff's behavioral issues interfere with his functioning in this domain. The ALJ again relied on the opinion of Dr. Buban, as well as that of the state agency reviewing psychologist, who found less than marked limitations in plaintiff's functioning in this area. (Tr. 29-30). The ALJ stated that there were school reports in the record noting that plaintiff "was bright, but simply refused to follow through with assignments" (Tr. 30, citing Tr. 253-60); he had "no to slight limitations in the ability to acquire and use information, as his behavior interferes with his academic skills" (Tr. 30, citing Tr. 266-76); intelligence test scores showed a full scale IQ of 40 but the results were considered invalid due to plaintiff's lack of effort, and in fact his "intellectual functioning has never been adequately assessed due to his lack of compliance with testing" (Tr. 30); and it appears he "has the capacity and intelligence to achieve if he chooses to do so." (*Id.*). The ALJ did not explain why the behavioral issues that interfered with plaintiff's academic functioning and achievement, which appear to be manifestations of his depression and oppositional defiant disorder, should be discounted in determining the severity of plaintiff's limitations in this domain in accordance with the "whole child" approach. The ALJ therefore erred by finding that plaintiff has less than marked

12

limitations in the domain of acquiring and using information. Plaintiff's assignment of error should be sustained.

**2. The ALJ erred in finding that plaintiff's impairments do not meet Listing 112.04.**

To meet Listing 112.04, there must be: (A) a medically documented mood disorder; and (B) for children age 3 to attainment of age 18, at least marked impairment in two of the following: (1) age-appropriate cognitive/communicative function; (2) age-appropriate social functioning; (3) age-appropriate personal functioning; and (4) the ability to maintain concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P., Appendix 1, § 112.04.

The ALJ relied on the testimony of Dr. Buban to find that while plaintiff suffers from a mood disorder and a severe oppositional defiant disorder, plaintiff's impairments do not meet or equal Listing 112.04 because plaintiff does not exhibit "marked" or "extreme" functional limitations in two or more of the relevant "B" categories or in the relevant childhood domains. (Tr. 28).

Plaintiff alleges that the ALJ erred by relying on Dr. Buban's testimony in finding his impairments do not meet Listing 112.04 for mood disorders for the same reasons set forth above. (Doc. 12 at 11-13). The Commissioner contends that the ALJ reasonably decided to adopt the findings of the medical expert that plaintiff's mental impairments do not meet or equal the Listings.

Just as the ALJ erred by relying on Dr. Buban's testimony to find plaintiff does not functionally equal the Listings, the ALJ's reliance on the medical expert's testimony to find plaintiff's impairments did not meet or equal Listing 112.04 is in error. As explained above

13

in connection with plaintiff's functional equivalence arguments, Dr. Buban's testimony strongly suggests she failed to consider the impact of plaintiff's behavior on his functioning when assessing the degree of limitation in the domain of attending and completing tasks, even though Dr. Buban attributed plaintiff's behavior at least in part to his mental impairments. This was error under the Social Security regulations, which recognize that an impairment "may have effects in more than one domain; therefore, we will evaluate the limitations from your impairment(s) in any affected domain(s)." 20 C.F.R. § 416.926a(c). *See also* SSR 09-1p (setting forth "whole child" approach). The ALJ's reliance on Dr. Buban's testimony to find that plaintiff does not exhibit marked limitation in concentration, persistence and pace is therefore likewise in error. Plaintiff's assignment of error should be sustained.[5]

### 3. This matter should be reversed and remanded for further proceedings.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v.*

---

[5] The Court declines to address plaintiff's contentions that the ALJ failed to perform her own independent analysis of the evidence, instead deferring to Dr. Buban's analysis, and failed to sufficiently articulate her reasons for finding that plaintiff failed to meet Listing 112.04. Success on either of these arguments would result in a remand for further proceedings, which the Court recommends for the reasons set forth below.

*Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

Plaintiff seeks an outright reversal for an immediate award of benefits, arguing that the evidence clearly establishes he meets Listing 112.04. In addition to the marked limitation in social functioning found by the ALJ, plaintiff cites to evidence to demonstrate he has marked limitations in concentration, persistence and pace and/or in personal care as required under the "B" criteria of Listing 112.04. This includes evidence that plaintiff underwent a psychiatric hospitalization in November 2007 for suicidal and homicidal ideations and auditory hallucinations (Tr. 446-60, 515-23); he has a chronic problem with following directions and refusing or being unable to complete his work in school (Tr. 213-17, 253-60, 283-327); and his teacher reported in 2008 that he had a "very serious problem" on a daily to hourly basis with organizing his own things or school materials, working without distracting himself or others, and respecting/obeying adults in authority, and a "serious problem" on a daily to hourly basis in ten

15

other areas related to attending and completing tasks (Tr. 268-70). (Doc. 12 at 13). However, plaintiff has not cited evidence to show that he suffered ongoing problems with suicidal or homicidal ideations and hallucinations following his hospitalization, and in fact he was not diagnosed with a "formal thought disorder" at that time. (Tr. 517). Moreover, although the school reports document a number of behavioral and other problems, the extent of plaintiff's limitation in the area of concentration, persistence and pace and/or personal care is not clear from those records. The evidence of disability is not overwhelming and it is not clear whether plaintiff's mental impairments meet Listing 112.04. Nor has plaintiff cited substantial evidence to show that his impairments functionally equal the Listings. Resolution of plaintiff's SSI claim depends on proper consideration of the impact of his depressive disorder and oppositional defiant disorder on his functioning across all domains, which is the ALJ's duty in the first instance. Therefore, this matter should be remanded for further proceedings, including a determination of whether plaintiff's impairments meet, medically equal, or functionally equal the Listings.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 2/5/15

Karen L. Litkovitz
United States Magistrate Judge

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARQUEZ DORN,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-197
Dlott, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).